UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSE ANTONIO MARTINEZ-MARINO,

     *Petitioner*,

v.

                                         Case No. 3:25-cv-854-JEP-MCR

SHERIFF OF BAKER COUNTY
SHERIFF'S OFFICE, et al.,

     *Respondents.*
_____/

## **ORDER**

Petitioner Jose Antonio Martinez-Marino, an immigration detainee at Baker Correctional Institute, filed a pro se amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 3) on August 15, 2025.[1] Respondents filed a motion to dismiss (Doc. 11), and Petitioner, through counsel, filed a response (Doc. 13). Ultimately, this Court concludes the amended petition must be granted.

**I.**

Petitioner, a citizen of Cuba, was paroled into the United States on June 18, 2005, and became a lawful permanent resident on February 4, 2008,

---

[1] The original petition was filed on July 29, 2025, but the Court directed Petitioner to file an amended petition because the original was not signed. (Doc. 2).

effective as of June 18, 2005. (Doc. 11 at 2; Doc. 11-1 at 1). Petitioner was convicted of trafficking in cocaine on November 12, 2015, and sentenced to a ten-year term of imprisonment. (Doc. 11 at 2; Doc. 11-1 at 1). On December 9, 2024, following completion of his criminal sentence, United States Immigration and Customs Enforcement ("**ICE**") took Petitioner into custody and on January 8, 2025, an immigration judge ordered him removed to Cuba or Spain. (Doc. 11 at 2; Doc. 11-1 at 2). Petitioner waived his right to appeal; thus, the order of removal was deemed final on January 8, 2025. (Doc. 11 at 2; Doc. 11-1 at 2)

On January 27, 2025, Spain advised Enforcement and Removal Operations ("**ERO**") that it would not issue travel documents for Petitioner, and ERO Headquarters Removal and International Operations "determined that there was no significant likelihood of removing Petitioner to Cuba in the reasonably foreseeable future." (Doc. 11 at 2-3; *see* Doc. 11-1 at 2). Nevertheless, on March 30, 2025, ERO determined that Petitioner should remain in custody due to his criminal history and potential for third-country removal. (Doc. 11 at 3; Doc. 11-1 at 2). "On June 17, 2025, ERO investigated third country removal to Canada." (Doc. 11-1 at 2). On June 20, 2025, ERO conducted a 180-day custody review and again concluded that Petitioner should remain in custody. (Doc. 11 at 3; Doc. 11-1 at 2).

On September 17, 2025, ERO transported Petitioner to the United States-Mexico border, but Petitioner refused to be removed to Mexico. (Doc. 11 at 3; Doc. 11-1 at 2). On November 4, 2025, Cuba refused to accept Petitioner. (Doc. 11 at 3; Doc. 11-1 at 2). "Petitioner was offered a second opportunity to be removed to Mexico, to which Petitioner responded that if he could not go back to Cuba, he wanted to stay in the United States." (Doc. 11 at 3; *see* Doc. 11-1 at 2). According to Respondents, "[d]espite Petitioner's intransigence, ERO continues to explore third country removal options and believes there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future." (Doc. 11 at 3; *see* Doc. 11-1 at 2).

Petitioner filed the instant case on July 29, 2025. He contends that he is entitled to immediate release from ICE custody under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Fifth Amendment, because his detention following his final order of removal has exceeded six months and there is no significant likelihood of removal in the reasonably foreseeable future. (*See* Doc. 3 at 6-7; *see generally* Doc. 13).

## II.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati*

3

*v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at \*2 (D.N.J. Nov. 17, 2025)[2] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens following a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of*

---

[2] Although district court orders are non-precedential, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

*removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

**III.**

Here, there is no dispute that when Petitioner filed this case, he had been in ICE custody for over six months following his order of removal. Nevertheless, Respondents contend that "Petitioner's refusal to be removed to Mexico, or any other country but Cuba, is the sole reason that he remains detained today." (Doc. 11 at 7; *see id.* at 6 (asserting that "his non-cooperation is his only barrier to his removal")). Respondents request that the Court "toll[]" Petitioner's period of detention because he "has refused to be removed, despite being given the opportunity." (*Id.* at 7, 8). They further argue that "Petitioner is additionally not entitled to relief under *Zadvydas* because he prevented his own removal and thus cannot now state that his removal is not reasonably foreseeable." (*Id.* at 8). In support of their position, Respondents rely on the Declaration of Deportation Officer Luke Tine. (*See* Doc. 11-1). Officer Tine avers in pertinent part: "On September 17, 2025, Petitioner was transported to the U.S.-Mexico border and refused removal to Mexico. . . . On November 12, 2025, Petitioner declined third country removal to Mexico stating if he cannot go back to Cuba then he wants to stay in the United States." (*Id.* at 2).

6

Section 1231(a)(1)(C)[3] explicitly provides for extension of the removal period:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal

---

[3] Respondents cite 8 U.S.C. § 1253(a), which is the section that imposes penalties (fines or imprisonment) for an alien's willful failure or refusal to make timely application in good faith for travel or other documents necessary for the alien's departure or for conspiring or acting to prevent or hamper the alien's departure. (Doc. 11 at 6).

order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); s*ee Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[4] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

---

[4] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Whether § 1231(a)(1)(C) applies as a tolling mechanism to the six-month period or to the question of whether Petitioner has shown a good reason to believe his removal is not reasonably foreseeable is of no moment here, because either way, Respondents, who raise the issue, have not shown that Petitioner's actions prevented his removal.

Initially, the Court notes that Petitioner was detained by ICE on December 9, 2024, and his order of removal became final on January 8, 2025. Thus, Petitioner's six-month period under *Zadvydas* ended on July 7, 2025, which was more than two months *before* ICE first attempted to remove Petitioner to Mexico. There effectively was no time left to toll because the six-month period had already expired before Petitioner's first "refusal" to be removed to Mexico.

Nevertheless, Respondents' position is based entirely on Officer Tine's averments that (1) Petitioner "refused removal to Mexico" after he was transported to the border on September 17, 2025; and (2) on November 12, 2025, "Petitioner declined third country removal to Mexico stating that if he cannot go back to Cuba then he wants to stay in the United States." (Doc. 11-1 at 2). As to the first averment, Officer Tine does not provide any context to his assertion or otherwise explain the circumstances that occurred at the border. It is unclear whether ICE transported Petitioner to the border and essentially asked him to voluntarily depart, whether ICE had ever previously

9

communicated with Mexico regarding Petitioner, or whether ICE even had an approved plan for removal to Mexico that Petitioner actually thwarted in some way. Further, assuming that Mexico was willing to accept Petitioner, Officer Tine does not explain why ICE could not or did not thereafter seek travel documents for Petitioner or otherwise plan for his removal to Mexico via a different way, such as a charter flight.

As to Officer Tine's second averment, he likewise fails to explain how Petitioner's expressed preference—approximately two months after the first removal effort to Mexico—that he desired to stay in the United States if he could not go back to Cuba, prevented his removal. Certainly, Petitioner's expressed desire to stay in the United States if he cannot be removed to his country of citizenship is not unique. Yet, ICE removes individuals every day. And this case is a far cry from the non-binding cases Respondents cite in which the petitioners affirmatively acted in ways that actually prevented ICE from removing them. *See Oladokun*, 479 F. App'x at 896–97 (absconding for five years after his final order of removal was entered; becoming combative when placed on an airplane to be removed and then trying to flee; and refusing to complete necessary forms on several occasions or submit to fingerprinting); *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003) (continual failure to cooperate, including telling the Ethiopian government that he was "Eritrean" when he was actually Ethiopian and refusing to provide requested documents); *Olajide*

10

*v. B.I.C.E.*, 402 F. Supp. 2d 688, 693–94 (E.D. Va. 2005) (demanding dental surgery prior to being removed, yet refusing the government's offer of free surgical treatment by a specialist); *Riley v. Greene*, 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001) (refusing to name any country of choice for deportation; failing to contact other countries to seek immigration status and/or renounce his citizenship for a significant period of time; and refusing to assist in completing travel arrangements); *Sango-Dema v. Dist. Dir., I.N.S.*, 122 F. Supp. 2d 213, 221 (D. Mass. 2000) (refusing to provide his passport and birth certificate, communicate with officials at the embassy of his country of origin, or complete any necessary applications to facilitate his removal).

Here, there is no indication that Petitioner made any affirmative misrepresentations or refused to accurately provide ICE with any requested information, refused to complete necessary forms, physically interfered with his impending removal, or otherwise constructed a ploy to prevent his removal. The only evidence Respondents provide is Officer Tine's Declaration, which simply states that Petitioner "refused removal to Mexico" in September 2025, and approximately two months later, he declined a second offer to be removed to Mexico and expressed a preference to remain in the United States if he could not be returned to Cuba. But Respondents do not provide any specific information regarding what actions Petitioner took that actually impeded ICE's ability to remove him. Without more, the Court cannot find that

11

Petitioner's actions as described in Officer Tine's Declaration prevented his removal. As such, the Court finds Petitioner's six-month period expired prior to filing this case.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner has now been detained more than eight months beyond the six-month period; he contends that ICE is unable to remove him to either country listed in his removal order (Cuba and Spain); and he asserts that ICE has not identified any agreement with a third country to accept him, requested travel documents, or provided a timeline for potential third-country removal. For the same reasons expressed above, the Court declines to find that Petitioner's "refusals" to be removed to Mexico have prevented his removal. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, Respondents fail to do so.

ICE has been aware since January 27, 2025, that it was unable to remove Petitioner to the countries listed in his removal order. (*See* Doc. 11-1 at 1 (recognizing that Spain would not issue travel documents and there was no significant likelihood of removing Petitioner to Cuba in the reasonably foreseeable future)). Yet, ICE apparently took no action for more than four months until June 17, 2025, when it "investigated third country removal to

Canada." (Doc. 11-1 at 2[5]). Then, another three months passed before ERO transported Petitioner to the border, where he "refused removal to Mexico." (*Id.*). Approximately another two months passed before Petitioner "declined third country removal to Mexico" and expressed his preference to stay in the United States if he could not be removed to Cuba. (*Id.*). At the time of Officer Tine's Declaration (December 23, 2025), ERO was "continuing to explore third-country removal options." (*Id.*).

Respondents have not provided any evidence to suggest that ICE has actually communicated with Mexico or any other third country regarding Petitioner. Nor have Respondents indicated that the necessary travel documents have been sought—let alone obtained—for any country. Indeed, Respondents do not even identify any country they are currently considering for Petitioner's removal. That "ERO is continuing to explore third-country removal options" does not support Respondents' conclusion that Petitioner's "removal is reasonably foreseeable." It has now been more than fourteen months since Petitioner's order of removal became final, yet Respondents have not identified any third country they are communicating with regarding Petitioner, nor have they articulated a plan for his removal. Rather, ERO is simply "explor[ing] third-country removal options," but Respondents have

---

[5] Officer Tine's Declaration does not provide any other information regarding ICE's efforts to remove Petitioner to Canada.

13

failed to show that they are any closer to removing Petitioner than they were approximately fourteen months ago. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s]."). Again, although Respondents argue that Petitioner has thwarted his removal, the Court finds their evidence insufficient to support such a showing.

Based on the evidence presented, the Court finds that Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*.

Accordingly, it is **ORDERED**:

1. Respondents' motion to dismiss (Doc. 11) is **DENIED**.

2. Petitioner's amended petition for writ of habeas corpus (Doc. 3) is **GRANTED**. Respondents shall release Petitioner **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to enter judgment granting the amended petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 11, 2026.

        JORDAN E. PRATT
     UNITED STATES DISTRICT JUDGE

c:
Counsel of Record

15